**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Abel Gilberto SALINAS–CANO,**
**Defendant–Appellant.**

**No. 91–2054.**

United States Court of Appeals,
Tenth Circuit.

March 18, 1992.

Vince D'Angelo, Albuquerque, N.M., for defendant-appellant.

William L. Lutz, U.S. Atty. and Presiliano A. Torrez, Asst. U.S. Atty., Albuquerque, for plaintiff-appellee.

Before SEYMOUR, BARRETT, and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

This case requires that we review the authority of a person other than the owner to consent to a search of a closed suitcase. Abel Gilberto Salinas–Cano entered a conditional plea of guilty to possession with intent to distribute more than 500 grams of cocaine.[1] He contends on appeal that his girlfriend did not have authority to consent to a search of his suitcase in which the cocaine was discovered. For the reasons set out below, we reverse.

## I.

The relevant facts are essentially undisputed. Mr. Salinas–Cano left his suitcase at his girlfriend's apartment, where he spent several nights each week at her invitation. His girlfriend, Shirley Garcia, was the only tenant named on the lease of the apartment and the sole rentpayer. The police observed Mr. Salinas–Cano going in and out of Ms. Garcia's apartment, and after they arrested him following a controlled drug buy, they went to her apartment and asked for permission to search it. They told her they were specifically interested in Mr. Salinas–Cano and his possessions. Ms. Garcia consented and led them to the area where Mr. Salinas–Cano kept his belongings. The police opened and searched Mr. Salinas–Cano's closed but unlocked suitcase, inside of which they discovered a quantity of cocaine.

In his testimony at the suppression hearing, the searching officer conceded that he had no basis for probable cause to search the apartment or its contents, and that the search was authorized, if at all, only by Ms. Garcia's consent. Rec., vol. I, at 41. Moreover, it is undisputed that the officer knew when he searched the suitcase that Mr.

---

1. The terms of this agreement provide that if this conviction is reversed on appeal, the government will dismiss the count but will be free to proceed with two counts charging conspiracy to distribute and possession with intent to distribute heroin. If this conviction is affirmed, the government will dismiss the heroin counts. Brief for Appellant at 6.

Salinas–Cano owned it. The officer thus testified as follows:

"Q [W]hen you spoke to Shirley Garcia you asked her specifically about Mr. Salinas; did you not?

A Yes sir, I did.

Q And she told you that he occasionally stayed at that apartment?

A That is correct.

Q And you were aware that there were items in that apartment that belonged to Mr. Salinas because you asked Shirley Garcia about it; did you not?

A Yes, sir, that is correct.

Q And she is the person who took you to the bedroom and showed you where his belongings were?

A Yes, sir, that is correct.

Q But Shirley Garcia never indicated to you that that suitcase belonged to her, did she?

A No, she did not.

Q She never indicated to you that the contents of that suitcase belonged to her, did she?

A In fact she denied that the contents of that suitcase belonged to her, yes, sir.

Q *So she specifically denied that she owned that suitcase and you knew at the time that you seized that suitcase that it belonged to Mr. Salinas?*

A *Yes, sir.*"

Rec., vol. I, at 40–41 (emphasis added). Indeed, the officer desired to search the suitcase only because he knew it belonged to Mr. Salinas–Cano. *Id.* at 41.

In denying Mr. Salinas–Cano's motion to suppress the evidence discovered in the suitcase, the district court found as follows:

"The suitcase belonging to the defendant was placed by him with the consent of the renter or lessor of the apartment, called the resident under [the lease].

"She was the resident of the apartment, that is, she rented the apartment. She had the authority, the control over the apartment and the items that were in that apartment. She gave consent to search the apartment, the consent to search those things that were in the

apartment. *Having control of the apartment she had control of the things that were there,* and she gave consent to search the suitcase belonging to Mr. Salinas in which was found the cocaine."

*Id.* at 43 (emphasis added).

## II.

▮ For his part, Mr. Salinas–Cano has always conceded that Ms. Garcia could consent to the search of the premises, but he contests her authority over his closed suitcase. He is entirely correct in admitting that the general consent to search the apartment was valid and authorized, but his concession does not preclude the challenge he makes here.

"A privacy interest in a home itself need not be coextensive with a privacy interest in the contents or movements of everything situated inside the home.... *A homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home....*

"*[W]hen a guest in a private home has a private container to which the homeowner has no right of access ... the homeowner ... lacks the power to give effective consent to the search of the closed container.*"

*United States v. Karo,* 468 U.S. 705, 725–26, 104 S.Ct. 3296, 3308–09, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring) (citations omitted) (emphasis added); *see also United States v. Rodriguez,* 888 F.2d 519, 523 (7th Cir.1989) (separate consent to search container necessary even after consent to search premises is given). Consent to search a container "is effective only when given by one with 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.... Common authority ... rests ... on *mutual use of the property by persons generally having joint access or control for most purposes.'*" *Karo,* 468 U.S. at 725, 104 S.Ct. at 3308 (quoting *United States v. Matlock,* 415 U.S. 164, 171 & n. 7, 94 S.Ct. 988, 993 & n. 7, 39 L.Ed.2d 242 (1974)) (emphasis added).

The government has the burden of proving the effectiveness of a third party's consent. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990); *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir.1990).

> *"The burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry.* If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to 'mutual use' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.'"

*United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C.Cir.1991) (quoting *Rodriguez*, 110 S.Ct. at 2801 and adding emphasis). The government must therefore come forward with persuasive evidence of both shared use *and* joint access or control of a container in order to support third party consent. *See United States v. Matlock*, 415 U.S. 164, 171, n. 7, 94 S.Ct. 988, 993, n. 7, 39 L.Ed.2d 242 (1974).

Whether the government can demonstrate a host's authority to consent to the search of items left in her home depends on several factors. First, certain types of containers historically command a high degree of privacy, and the type of container at issue is therefore an important consideration.

> "Common experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law's 'enclosed spaces'—mankind's valises, suitcases, footlockers, strong boxes, etc.—are frequently the objects of his highest privacy expectations, and that the expectations may well be at their most intense when such effects are deposited temporarily ... in places under the general control of another."

*United States v. Block*, 590 F.2d 535, 541 (4th Cir.1978); *see also* 3 W. LaFave, *Search and Seizure*, § 8.5(d), at 307 (2d ed. 1987) ("Among the articles which it would seem would most commonly be deserving of the 'high expectation of privacy' label in the host-guest context would be the overnight bag or suitcase"); *compare United States v. Wilson*, 536 F.2d 883, 884–85 (9th Cir.) (girlfriend's consent to search suitcase invalid), *cert. denied*, 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976) *with United States v. Sealey*, 830 F.2d 1028, 1031 (9th Cir.1987) (boxes and plastic buckets not the type of containers commonly used to preserve privacy; girlfriend's consent to search therefore valid); *United States v. Falcon*, 766 F.2d 1469, 1475–76 (10th Cir. 1985) (brother's consent to play audiotape left in his apartment valid).

A second factor is the precautions taken by the owner to manifest his subjective expectation of privacy, for example locking the container or explicitly forbidding the host to open it. *See, e.g., Block*, 590 F.2d 535. In addition, courts have generally been more forgiving of searches conducted "upon the initiative of the host for reasons relating to the host's interest in the safe and secure enjoyment of his premises." *LaFave*, § 8.5(d), at 306–07. Thus, the Ninth Circuit upheld a wife's consent to a search conducted by police officers in response to her own call to the police about domestic violence and her request that the defendant be arrested. *Sealey*, 830 F.2d at 1030; *see also United States v. Isom*, 588 F.2d 858 (2d Cir.1978) (consenting party summoned police and consented to search for weapons after guest threatened her). Another factor is the apparent nature of the consenting party's lack of interest in the item. Courts consider, for example, whether the consenter explicitly disclaimed ownership or whether the defendant was present but did not claim ownership. *See Isom*, 588 F.2d at 861 (defendant present at search but neither asserted ownership nor objected to search); *White v. United States*, 444 F.2d 724, 726 (10th Cir.1971) (among factors legitimating wife's consent to search of bag was that she never indicated it belonged exclusively to defendant).

### III.

Mr. Salinas–Cano argues that Ms. Garcia knew the suitcase belonged only to him, that he brought it to her house specifi-

cally so that it would be secure, and that she told the police that the suitcase was his. Implicit in his challenge is that he did not assume the risk that she would expose his personal belongings to the police. *See United States v. Miroff*, 606 F.2d 777, 778–79 (7th Cir.1979) (defendants assumed risk of hosts consenting to search when they assured hosts that there was nothing illegal or improper being kept in room they occupied), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980). Although it was unlocked, the suitcase searched here was a type of container long associated with privacy expectations, unlike a cardboard box, a cassette tape, or a plastic bucket. Mr. Salinas–Cano testified to his subjective expectation that the suitcase and its contents would remain private, and stated that he never permitted Shirley Garcia to look inside it. Rec., vol. I, at 18. He did not abandon the suitcase at her home, thereby implying that she had control, but instead maintained a periodic presence in the apartment by staying there approximately two nights a week. *Cf. United States v. Sellers*, 667 F.2d 1123, 1126 (4th Cir.1981) (after arrest, defendants asked friends to go to apartment, take personal effects, and store them); *Falcon*, 766 F.2d at 1474 (brother who consented to playing of audiotape was sole occupant of apartment). Finally, Ms. Garcia clearly stated, and the searching officer knew, that the suitcase belonged to the defendant alone; there was no suggestion that Ms. Garcia had ever used or been permitted to use it. *Cf. Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969) (joint user of duffel bag can consent to search).

The district court here held that "[h]aving control of the apartment [Ms. Garcia] had control of the things that were there." Rec., vol. I, at 43. The district court then added: "[T]here is no evidence which would *negate the authority* of Ms. Garcia to give consent to the search of the items in the apartment that didn't belong to her." *Id.* at 44 (emphasis added). The first of these findings is incorrect as a matter of law; ownership and control of property does not automatically confer authority over con-

tainers within it, *see Karo*, 468 U.S. at 725–26, 104 S.Ct. at 3308–09. The second misconceives the government's burden of proof; there is simply no evidence in this record that Shirley Garcia exercised mutual use or possessed the joint interest and control over the suitcase necessary to legitimize her consent to search it.

■ We also reject the government's attempt to show that Ms. Garcia had "apparent authority" within the meaning of *Illinois v. Rodriguez*, 110 S.Ct. at 2799–2801. It is not enough for the officer to testify, as he did here, that he *thought* the consenting party had joint access and control. *See* rec., vol. I, at 37, 42. The "apparent authority" doctrine does not empower the police to legitimize a search merely by the incantation of the phrase. The Supreme Court's analysis of this subject instead rests entirely on the *reasonableness* of the officer's belief. *See Rodriguez*, 110 S.Ct. at 2799–2801.

In *Rodriguez*, the Supreme Court held that police officers might reasonably have believed in the defendant's girlfriend's apparent authority to consent to a search of his apartment because she brought the officers there, let them in with her key, and told them that she had clothes and furniture there. *Id.* at 2797. The fact that the girlfriend had actually moved out several weeks earlier was found relevant only to the "facts bearing upon the authority to consent," *id.* at 2800, and did not in the Court's view undermine the reasonableness of the officers' belief in her apparent authority.

■ In interpreting *Rodriguez's* reasonableness requirement, we agree with the D.C. Circuit that the Supreme Court "held only that the Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law." *Whitfield*, 939 F.2d at 1073–74. In other words, "*Rodriguez* ... applies to situations in which an officer would have had valid consent to search *if the facts were as he reasonably believed them to be.*" *Id.* at 1074 (emphasis added). Here, to the con-

trary, the officer was not mistaken as to the facts; his error consisted of concluding that the facts authorized Ms. Garcia's consent. His was a mistake of *law* rather than a mistake of fact, and *Rodriguez* therefore does not resolve the issue. When the officer searched the home and the suitcase here, he correctly believed that the former was rented by Ms. Garcia, that the latter belonged to Mr. Salinas–Cano, and that Ms. Garcia consented to a search of both. "But whether she had 'mutual use' of the [suitcase] ... could not be determined from anything the agents asked." *Id.* The information known to the officer was insufficient to support a reasonable belief in Ms. Garcia's authority, and the "apparent authority" exception to the warrant requirement is therefore inapplicable here. To hold that an officer may reasonably find authority to consent solely on the basis of the presence of a suitcase in the home of another would render meaningless the Fourth Amendment's protection of such suitcases. We hold that the police "could not infer such authority merely from [the consenter's] ownership of the house." *Id.* 110 S.Ct. at 1075.

Accordingly, we REVERSE the judgment of the district court, and REMAND for further proceedings consistent with this opinion.