43 F.3d 1484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Alexander RIES, Defendant-Appellant.
 No. 93-8104.
 United States Court of Appeals, Tenth Circuit.
 Dec. 13, 1994.
 
 ORDER AND JUDGMENT[1]
 Before MCKAY and LOGAN, Circuit Judges, and MATSCH, District Judge.[2]
 Defendant Alexander Ries appeals the denial of his motion to suppress evidence allegedly obtained in violation of his Fourth Amendment rights. He entered a conditional guilty plea to a charge of possession with intent to distribute marijuana, in violation of 21 U.S.C. 841(a)(1), and aiding and abetting, in violation of 18 U.S.C. 2.
 The testimony at the suppression hearing was as follows: Wyoming Highway Patrol Officer David Rettinger stopped a car being driven by Jan Juelicher near Laramie, Wyoming, after he observed that Juelicher was driving on a nearly flat tire. The patrolman approached Juelicher and asked for a driver's license and registration. Juelicher--a German national--produced a valid Washington driver's license, a car rental agreement executed in California in his own name, a German passport, and some airline documents. He also told the officer that he had come from Europe to California and was driving to Boston. After Officer Rettinger satisfied himself that all of the documents were in order, he told Juelicher that he could get out of his car to change the tire. Although Juelicher suggested that he would rather first drive to the nearest gas station, the officer directed him to change the tire there because it posed a safety hazard.
 When Juelicher opened the trunk of the car to begin changing the tire--revealing three suitcases and a duffel bag--Rettinger smelled bubble gum air freshener and noticed that a speaker in the trunk appeared to have been tampered with. Juelicher removed the suitcases from the trunk and placed them together about ten feet away from the car. Rettinger then noticed an air freshener container on the floor of the trunk and asked Juelicher who put it there. Juelicher said it was there when he got the car. Rettinger asked Juelicher whether he usually put that type of air freshener with his clothes; Juelicher shrugged in response. When Rettinger asked Juelicher if he had any drugs in the bag, he replied "no," and continued to change the tire. The jack in the rental car did not work, so Rettinger told Juelicher to loosen the lug nuts while he got a jack from his patrol car.
 When Rettinger went to his patrol car, he radioed Officer Dan Dyer to request assistance because he suspected Juelicher might be transporting narcotics. When Dyer arrived at the scene the flat tire had been changed. Dyer asked Juelicher who owned the luggage, and Juelicher told him that the duffel bag was his but that the three suitcases belonged to a friend who was meeting him in Boston. Rettinger asked Juelicher if he could search the car, and Juelicher consented. The officers searched the car from the hood through the trunk but found nothing. During the search Dyer picked up each of the suitcases and noticed that they each weighed about forty pounds. He sniffed one bag and it smelled like bubble gum. Rettinger lifted and felt the suitcases and noted that they were uniform in size, firmness and weight. Dyer then asked Juelicher if he could look in one of the suitcases, and Juelicher said "yes," apparently after asking why the officers wanted to search. When Officer Dyer asked Juelicher for the keys to the small padlocks on the suitcases, however, Juelicher said that he did not have the keys. Officer Dyer then tried to open a lock with a pen tip and a pocket knife; the knife broke the lock. The officers then opened that suitcase. When the officers found thirty-three pounds of marijuana in the suitcase they placed Juelicher under arrest.
 After he was arrested Juelicher implicated defendant in the scheme and consented to have a phone call to defendant recorded by law enforcement agents. Defendant implicated himself in the crime during the call and the next day United States Drug Enforcement Administration agents arrested him.
 At the suppression hearing defendant testified and asserted that the suitcases were his, that the marijuana was "fronted" to him, that he had enlisted Juelicher to transport the marijuana to Boston, and that he planned to satisfy a debt he owed to Juelicher from the proceeds of the sale of the marijuana. He also claimed that he helped to rent the car by giving Juelicher $1000, although Juelicher rented the car in his own name using his own credit card. Defendant asserted that both he and Juelicher participated in packing the marijuana in the suitcases, which belonged to defendant.
 After the two officers testified, defendant asked the court to compel Juelicher to testify. The district court denied the request, stating that it should have been made earlier and that it was too late in the afternoon to send the marshals to get Juelicher from the county jail. The district court then denied the motion to suppress.
 In reviewing a district court's denial of a motion to suppress evidence we must accept the factual findings unless clearly erroneous. United States v. Betancur, 24 F.3d 73, 75 (10th Cir.1994). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law that we review de novo. Id. at 75 (reviewing questions of standing and reasonableness of search de novo).
 In United States v. Roper, 918 F.2d 885, 887-88 (10th Cir.1990), we held that the driver of a rental car who had not rented the car and was not listed as an additional driver in the rental agreement had insufficient ownership, lawful possession or custody to challenge the search of the vehicle. See also United States v. Obregon, 748 F.2d 1371, 1374 (10th Cir.1984). Defendant would distinguish Roper from the instant case because there Roper did not claim ownership of the contraband. But we foreclosed defendant's argument in United States v. Abreu, 935 F.2d 1130 (10th Cir.) (McKay, J.), cert. denied, 112 S.Ct. 271 (1991), where we held that a defendant lacked standing to challenge the search of a trailer attached to a tractor he owned that was driven by his nephew, because the defendant had no right, title or interest in the trailer--even though the defendant "admitted to agents that he was responsible for the cocaine seized." Id. at 1132.
 Even assuming defendant had an expectation of privacy in the suitcases and their contents sufficient to give him standing to challenge the search, the district court found that Juelicher consented to a search of the suitcase. To establish third party consent, the government must show "both shared use and joint access or control of a container." United States v. Salinas-Cano, 959 F.2d 861, 864 (10th Cir.1992) (citing United States v. Matlock, 415 U.S. 164, 171 n. 7 (1974)). The district court found that Juelicher was a joint venturer in the marijuana deal, with a co-possessory interest in the suitcases. That finding is not clearly erroneous. By defendant's own admission Juelicher helped pack the marijuana in the suitcases, was entrusted with their possession to transport them from California to Massachusetts, and was to receive money from the proceeds of the sale of the contraband.[3] Consequently, even if defendant had an expectation of privacy in the suitcases and their contents, that interest does not override Juelicher's authority to consent to the search.
 Further, even if Juelicher did not have actual authority to consent to the search, the officers here reasonably could have believed that he did. See Illinois v. Rodriguez, 497 U.S. 177 (1990) (if facts as officer reasonably believes them to be would allow third party to consent, consent valid under apparent authority doctrine). Under the facts as they knew them, the officers reasonably could have concluded that Juelicher made up the story that the suitcases belonged to someone else. Juelicher's assertion that he did not have the keys would not necessarily have led a reasonable officer to believe that he was telling the truth or that he did not have authority to authorize a search of the suitcases. See United States v. Gunter, 546 F.2d 861, 868 (10th Cir.1976), cert. denied, 431 U.S. 920 (1977). Often drivers of cars containing drugs deny that they have keys to the car trunk or to the suitcases in the vehicle only to have those keys show up when they are required to empty their pockets. Indeed, defendant testified that Juelicher "had a key to just about every lock that I had access to, cars, apartments. It was like a big key chain." Appellant's App. tr. 41.
 Finally, defendant argues that he should have been allowed to elicit testimony from Juelicher at the suppression hearing on the issue of consent. Defendant first made the request at the end of the long suppression hearing in the late afternoon.[4] The request simply indicated a hope that Juelicher, who had already pleaded guilty and was incarcerated, would contradict the officers' testimony about his consent to the search. Under the circumstances we cannot hold that the district court abused its discretion in denying this belated request.
 AFFIRMED.
 McKAY, J., joins in the judgment and the text of the disposition except that portion that addresses standing.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Richard P. Matsch, Chief Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [3]
 Arguably Juelicher also was co-owner of the marijuana. Defendant when asked about the ownership testified somewhat equivocally, as follows:
 THE COURT: And whose marijuana was it?
 THE WITNESS [Defendant]: Well--
 THE COURT: Yours or his [Juelicher]?
 THE WITNESS: Well, it was--that's a difficult question. Who carries the responsibility? In a way I do, and to a degree he does, is that what this court is saying?
 MR. McBRIDE: The court is saying: Whose marijuana is it?
 THE WITNESS: Mine.
 Appellant's App. tr. 44-45. Then on cross-examination:
 Q. (BY MR. HILL) Now under questioning about whose marijuana it was, whether it was yours or Juelicher's, you said, "That's a difficult question"; isn't that correct?
 A. [Defendant] Well, from the responsibility point of view.
 Q. Right. Because you both were responsible for it; correct?
 A. In a way, yes.
 Id. at 54.
 
 
 [4]
 The hearing adjourned shortly after this request, at 5:05 p.m. Relevant to the request's timing the court stated as follows:
 Well, as I said, Juelicher is in the county jail, which is several blocks from here, and by the time the marshals got down there and fished him out and brought him up here it would be well past 5:00. If you wanted him here you should have asked me for it sooner, and I would have been glad to have ordered the marshals to produce him, but I can't do it on 12 minutes' notice.
 And as I say, I'm due to sit with the Multi-District Panel on Litigation in Spokane, and I have got to leave here at 7:00 a.m. in the morning to get there, and so this hearing is about to end.
 Appellant's App. tr. 134.