(92 P.3d 1116)
No. 91,216

STATE OF KANSAS, *Appellant,* v. BARRY WAYNE TONROY, *Appellee.*

Opinion filed July 2, 2004.

*Thomas J. Drees*, county attorney, and *Phill Kline*, attorney general, for appellant.

*Quentin John Boone*, of the Law Office of Quentin J. Boone, of Hays, for appellee.

Before MALONE, P.J., GREENE and McANANY, JJ.

McANANY, J.: The State appeals the trial court's suppression of evidence obtained in the course of a search of the apartment of Florida Lee. Finding that the State has failed to establish the lawfulness of the search, we affirm the trial court's ruling.

Deputy Sheriff Parks and Detective White responded to a complaint that marijuana smoke was emanating from Lee's apartment. Lee consented to the officers entering her apartment to discuss her neighbor's complaint. The officers smelled a strong odor of marijuana smoke inside the apartment. There were eight other people in the apartment with Lee. White asked Lee if the officers could search the apartment for marijuana. Lee agreed to the search.

Parks searched the bedroom. There were several coats on the bed and also some coats and jackets on the floor. Parks did not know who owned the various coats and jackets. In the course of his search, Parks found a black leather jacket laying on the bed that had a baggie of marijuana in one of its pockets. Upon further examination, Parks found a wallet in the inside pocket of the jacket. Inside the wallet, Parks discovered a small baggie that contained what Parks believed to be methamphetamine and identification for Barry Tonroy, the defendant.

Parks and White then talked to Tonroy. Although Tonroy was not under arrest at the time, White read him his *Miranda* rights. Tonroy told the officers that he owned the marijuana, but denied ownership of the methamphetamine. No officer asked for, and Tonroy never gave, consent to search his jacket or his wallet. Parks did not believe it was necessary to determine who owned the jacket

before it was searched since Lee had already given consent to his search of the apartment.

Tonroy was charged with one count of possession of methamphetamine, one count of possession of marijuana, and one count of possession of drug paraphernalia. Tonroy moved to suppress the evidence found inside the jacket and the statements he made to the officers after the jacket was searched. The trial court suppressed the evidence. The State now pursues this interlocutory appeal.

When a motion to suppress evidence based upon a claimed illegal search has been filed, the State bears the burden of showing that the search was lawful. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003). When reviewing a motion to suppress evidence, we determine whether the factual underpinnings of the trial court's decision are supported by substantial competent evidence. However, the ultimate legal conclusion drawn from those facts is a legal question requiring us to apply a de novo standard of review. We do not reweigh the evidence. *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001). Here, the facts are essentially not in dispute. Therefore, whether the trial court should have suppressed the evidence is a question of law over which we have unlimited review. *Boyd*, 275 Kan. at 273.

The officers did not obtain a warrant. Generally, a warrantless search is per se unreasonable and a violation of the Fourth Amendment to the United States Constitution. Consent, however, is an exception to this rule. 275 Kan. at 273. The State's entire justification for the search of Tonroy's coat is Lee's consent to the search of her apartment. Accordingly, we must consider whether Lee's consent was sufficient to allow Parks to search Tonroy's jacket. There is no Kansas case directly on point.

If Lee and Tonroy had common or shared authority over Tonroy's jacket based on their mutual use of the jacket and joint access and control over it, then Lee would have had authority in common with Tonroy to consent to its search. See *United States v. Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). Since there is no indication in the record that this was the case, authority for the search of Tonroy's jacket must be found elsewhere.

In *United States v. Salinas-Cano*, 959 F.2d 861 (10th Cir. 1992), defendant left his suitcase in his girlfriend's apartment, where he had stayed on several occasions. After defendant's arrest, the police asked his girlfriend for consent to search the apartment and, in particular, defendant's possessions. The girlfriend consented to the search. The police opened defendant's closed but unlocked suitcase and discovered cocaine. The police knew the suitcase belonged to defendant. The girlfriend denied owning the contents of the suitcase. On appeal, the Tenth Circuit Court of Appeals reversed the district court's denial of a motion to suppress and noted Justice O'Connor's statements in *United States v. Karo*, 468 U.S. 705, 726, 82 L. Ed. 2d 530, 104 S. Ct. 3296 (1984) (O'Connor, J. concurring): " '[W]hen a guest in a private home has a private container to which the homeowner has no right of access . . . the homeowner . . . lacks the power to give effective consent to the search of the closed container.' " *Salinas-Cano*, 959 F.2d at 863.

The court in *Salinas-Cano* concluded that when examining a resident's authority to consent to the search of other people's property within the residence, the court should consider (1) the type of container and determine whether it is of the type that commands a high degree of privacy, (2) the precautions taken by the owner of the property to manifest the owner's subjective expectation of privacy, and (3) the property owner's apparent lack of interest in the property or whether the owner has disclaimed ownership in the property. 959 F.2d at 864. How do these considerations apply in the present context?

Is the pocket of a jacket a "container" that commands a high degree of privacy? The pocket of a jacket is like a purse in that it is a closed container which keeps personal items hidden from public view. See *State v. Bissegger*, 76 P.3d 178, 182 (Utah App. 2003). One does not generally expect others to rummage through one's coat pockets without permission. It is hard to imagine one seriously arguing that if social guests arrive at a host's home and are invited to leave their coats on a bed in the bedroom, the host would be entitled to search through the pockets of the guests without their knowledge and consent. In such a circumstance, the guests could expect a high degree of privacy with respect to the contents of their

coats. And if the host has no authority to search through the pockets of the coats of the guests, it follows that the host would have no authority to authorize others, such as the police, to do so.

We next consider whether Tonroy took precautions to manifest his subjective expectation of privacy. Under the circumstances, the only thing Tonroy could have done would have been to keep the jacket with him during his visit. Common sense tells us that social guests are not required to keep their coats with them at all times while at the host's home in order to manifest a subjective expectation of privacy. Social guests do not forfeit their right to privacy in their jackets simply by leaving them on a bed with the coats and jackets of other guests in the host's bedroom.

Third, we examine the record to determine if defendant exhibited an apparent lack of interest or disclaimer of interest in the jacket. Nothing in the record suggests that Tonroy was aware that the police were going to search the entire apartment in general or his jacket in particular. Detective White could not state with any degree of certainty that Tonroy overheard his conversation with Lee about searching the apartment before the search began. Thus, there was no impetus for Tonroy to retrieve his jacket in order to negate any perception that he had abandoned his interest in it. Finally, there is no evidence that Tonroy affirmatively disclaimed ownership in the coat before it was searched.

Other jurisdictions agree that consent by an owner or tenant of a residence does not necessarily give the police consent to search closed containers within the residence that belong to others. See *Krise v. State*, 746 N.E.2d 957, 967-71 (Ind. 2001) (housemate's consent to search house did not allow police to search defendant's purse in bathroom); *State v. Grant*, 614 N.W.2d 848, 853-55 (Iowa App. 2000) (homeowner's consent to search house did not allow police to search defendant's zipped jacket pocket when defendant was guest and jacket in room where defendant was staying); *State v. Melbert*, 649 So. 2d 740, 743-44 (La. App. 1994) (homeowner's consent to search house did not give police authority to search defendant's bootbag in room where defendant was staying); *Owens v. State*, 322 Md. 616, 630-34, 589 A.2d 59 (1991) (tenant of apart-

ment could not give valid consent for police to search guest's zippered bag left at apartment).

Lee did not have actual authority to consent to the search of Tonroy's jacket. However, did Lee have apparent authority to consent to the search? Consent given by a third person can be effective if the officers reasonably believed the consent to be valid. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990). The apparent authority doctrine in *Rodriguez* only applies to reasonable mistakes of fact and not mistakes of law. *Salinas-Cano*, 959 F.2d at 865. Kansas has adopted the apparent authority doctrine. See *State v. Ratley*, 16 Kan. App. 2d 589, 595, 827 P.2d 78 (1992).

Did Parks reasonably believe that the jacket belonged to Lee or that she had common authority over the jacket? The garment in question was a black, leather jacket. The State does not argue that the style and size of the jacket was such that Parks could reasonably mistake it for one owned and worn by a woman of Lee's size and build as opposed to a man. Further, the search took place in February. The State makes no argument that the weather was such that the officers would not have expected Lee's guests to have come to her apartment wearing coats and jackets. Finally, Tonroy's jacket was not found hanging in Lee's closet commingled with other apparel that Parks could reasonably assume belonged to Lee. The jacket was found in a pile of other coats and jackets on the bed. The State offers nothing to rebut the reasonable assumption that there is a high probability that coats and jackets piled on a bed in the bedroom of an apartment during a social gathering attended by the host and eight guests are owned by the guests rather than the host.

The State has the burden to show the lawfulness of its search. As stated in *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991) (quoting *Rodriguez*, 497 U.S. at 188-89):

"The burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to 'mutual use' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.' [Citations omitted.]"

See also *Salinas-Cano*, 959 F.2d at 864 (quoting *Whitfield*); *United States v. Lee*, 972 F. Supp. 1330, 1351 (D. Kan. 1997) (quoting *Whitfield*).

The State failed to demonstrate that Parks had apparent authority as described in *Rodriguez* to search Tonroy's jacket.

Though both parties, as well as the trial court, discussed *State v. Rice*, 264 Kan. 232, 955 P.2d 1258 (1998), and *State v. Vandiver*, 257 Kan. 53, 891 P.2d 350 (1995), these cases, which consider the authority of police to detain and search a guest's person, are not applicable. There was no search of Tonroy's person in this case. The special conditions that apply in a search of one's person do not apply in this case. Likewise, the State's reliance upon *Wyoming v. Houghton*, 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999), is not well placed. *Houghton* involved the search of a vehicle. The Court in *Houghton* recognized that passengers and drivers have a reduced expectation of privacy with regard to property they transport in cars. 526 U.S. at 303; see also *California v. Acevedo*, 500 U.S. 565, 578, 114 L. Ed. 2d 619, 111 S. Ct. 1982 (1991) (stating that automobile searches differ from other searches).

The State failed to meet its burden of establishing the lawfulness of Park's search. Accordingly, the trial court was correct in suppressing the evidence found in Tonroy's jacket and in suppressing the statements Tonroy made to the officers after the search as "fruit of the poisonous tree." See *State v. Canaan*, 265 Kan. 835, 840, 964 P.2d 681 (1998).

Affirmed.