(260 P.3d 1240)

No. 104,309

STATE OF KANSAS, *Appellee*, v. BOBBIE JO JACKSON, *Appellant*.

—

Opinion filed July 29, 2011.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Joseph M. Penney*, assistant county attorney, and *Steve Six*, attorney general, for appellee.

Before GREENE, C.J., MALONE, J., and KNUDSON, S.J.

KNUDSON, J.: After a bench trial on stipulated facts, Bobbie Jo Jackson was convicted of possession of methamphetamine and possession of drug paraphernalia. She was given a controlling sentence of 16 months' confinement. Jackson contends on appeal that there was an illegal search and seizure of her purse and the district court erred in overruling her pretrial motion to suppress the drugs and paraphernalia found therein. We agree. Jackson's convictions are reversed and vacated, and the case remanded to the district court for further proceedings consistent with this opinion.

*The search of Jackson's purse*

The controlling facts are not in dispute. On November 18, 2008, officers of the El Dorado Police Department executed a search warrant that authorized a search for illegal drugs and paraphernalia within the residence of Marla Davenport. The warrant specifically provided for the search of Davenport and any other persons living at the residence. Davenport, her son, and five nonresidents including Jackson and two other women were on the premises. The officers took all seven people, most of whom were found in a bed-

room of the residence, to the living room before beginning a systematic search of the premises for drugs. At that time, the officers did not question Jackson or the other individuals.

In the kitchen, Police Officer Justin Phillips observed three or four purses lying on the floor in the kitchen. Phillips testified that in order to identify which purses belonged to Davenport and were subject to the reach of the search warrant, he began searching the purses for some form of identification. At the hearing on the motion to suppress evidence, Phillips testified that he did not first question the four women that were present as to ownership because he could not trust their responses to be truthful.

Phillips opened a purple purse with an orange handle and found within several items of drug paraphernalia in plain view. There was also in the purse a notice to appear addressed to Jackson. One of the items from the purse contained a residue that field-tested positive for methamphetamine. Jackson was placed under arrest for possession of methamphetamine.

*The district court overruled Jackson's motion to suppress*

In denying Jackson's motion to suppress, the district court recognized that had the purse been in her physical possession there would have been no legal justification under the search warrant to support the search. However, the district court reasoned: "In this case this purse was separated from any of the persons of the individuals within the residence. It is entirely reasonable for an officer, under these circumstances, to open that purse and first of all determine who it belonged to to initially search for proof of ownership."

Regarding Phillips' failure to question the women as to ownership of the purses before opening Jackson's purse, the district judge stated, "And I do believe, as Officer Phillips does based on his experience, that officers should not have to rely on the reliability of persons present as to who owns what item."

Jackson claims that the evidence seized from her purse should be suppressed because her privacy rights were violated under both the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. The State counters

that because the purse was not on Jackson's person or in close proximity, Jackson had no recognized right of privacy and Officer Phillips had legal authority under the search warrant to open and search all containers that might have contained drugs or paraphernalia.

*Standard of review*

Generally, on a motion to suppress evidence, the appellate court reviews the factual basis of the trial court's decision for substantial competent evidence, and the ultimate legal conclusion drawn from those facts raises a question of law requiring de novo review. *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009). However, on a motion to suppress evidence where the facts are undisputed, the appellate court exercises unlimited de novo review of the district court's legal conclusions. *State v. Daniel*, 291 Kan. 490, 495, 242 P.3d 1186 (2010). Furthermore, the State bears the burden of proving the lawfulness of a search and seizure to the trial court by a preponderance of the evidence. *State v. Pollman*, 286 Kan. 881, 886, 190 P.3d 234 (2008).

*When is a social guest's personal property subject to the reach of a search warrant?*

There are essentially two different approaches used to determine whether a social guest's personal property is subject to the reach of a search warrant—the physical proximity or possession test (possession test) and the actual or constructive notice test (notice test). It is not clear from our case law which test is generally followed in Kansas. We will begin our discussion with a sampling of representative decisions from other jurisdictions.

Under the possession test, police may assume any object not worn by or in the close physical proximity of the guest is subject to the warrant. *State v. Reid*, 190 Or. App. 49, 60-61, 77 P.3d 1134 (2003). Because this rule allows police to search any object not in the physical possession of the guest, the rule is easily applied by police and easily reviewed by the trial court. *State v. Andrews*, 201 Wis. 2d 383, 403, 549 N.W.2d 210 (1996). But as the Oregon Court of Appeals noted, the bright-line simplicity of the rule is not only

an advantage, but also a fault because the rule is potentially arbitrary and inflexible. 190 Or. App. at 60.

In contrast to the bright-line rule of the possession test, the notice test has two major elements, the notice element and a relationship exception, which have not been applied uniformly in the jurisdictions where the test governs. The notice test generally requires actual or reasonable constructive notice to police that an object within the premises may not be subject to the warrant or, without such notice, police may assume that the object is subject to the warrant. See *United States v. Neet*, 504 F. Supp. 1220, 1226-28 (D. Colo. 1981); Annot., 51 A.L.R. 5th 375.

The relationship exception to the notice test distinguishes between a casual social guest and a visitor with a special relationship to the premises and authorizes the search of someone who is more than just a casual social visitor. *People v. Frederick*, 142 Cal. App. 4th 400, 411, 48 Cal. Rptr. 3d 585 (2006). Police are authorized to search the personal effects of a guest who is more than just a casual visitor if the circumstances suggest that there is a relationship between that person and the illegal activities described in the warrant. 142 Cal. App. 4th at 411. For example, police were authorized to search the jacket of a visitor found at a residence at 3:45 a.m. because his presence at such an unusual hour suggested he was not a casual visitor. *United States v. Gray*, 814 F.2d 49, 51 (1st Cir. 1987).

If the relationship exception is not met, then the rule considers police knowledge or constructive knowledge as to the ownership of an object. " ' "[W]ithout notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to the search under a warrant are part of those premises for the purpose of executing the warrant." ' [Citation omitted.]" *Brown v. State*, 181 Ga. App. 768, 772, 353 S.E.2d 572 (1987). If police have no knowledge that the property belongs to a guest, or where there was an opportunity to conceal the contraband named in the warrant inside of that property immediately before the warrant was executed, police are justified in searching a guest's property. *People v. McCabe*, 144 Cal. App. 3d 827, 830, 192 Cal. Rptr. 635 (1983).

A third group of courts adopt a hybrid approach, examining both notice and physical possession. For example, the Washington Supreme Court noted both the lack of notice to police and the physical distance from the guest when authorizing the search of a pair of sweatpants lying on the floor. *State v. Hill*, 123 Wash. 2d 641, 647-48, 870 P.2d 313 (1994).

Jackson argues that Kansas cases have generally applied the notice test in determining what is sufficient to show ownership of a guest's property and exclude it from a premises search. The State's argument is more nuanced. First, the State argues the district court did not err in applying a physical possession test to uphold the search. Second, the State argues that even if a notice test is applied to the facts of this case, Officer Phillips had no notice that the purse belonged to Jackson; thus each of the purses located on the kitchen floor was subject to search under authority of the search warrant for the premises.

In *State v. Loudermilk*, 208 Kan. 893, 898-99, 494 P.2d 1174 (1972), the court upheld the search of social guests pursuant to a warrant. The search was lawful because the warrant authorized the search of all persons present on the premises, the affidavit stated that illegal drugs were being sold on the premises, and officers had probable cause to believe that the social guests present were involved in the drug sales.

The reasoning of *Loudermilk* closely mirrors the relationship exception of the notice test. In that case, a search of social guests was legitimate in part because officers had probable cause to believe that the social guests present were involved in the drug sales. 208 Kan. at 898-99. In *Loudermilk*, the language of the warrant and K.S.A. 22-2509 authorized the search of all persons present on the premises. See 208 Kan. at 894-95. Conversely, in the case now on appeal, the search warrant did not authorize the search of Jackson's person or her personal property. Moreover, there is no suggestion in the record on appeal that Jackson lived at the premises, was a person of interest under the terms and provisions of the search warrant, or was in any way engaging in illegal activity. Consequently, if we determine the notice test is to be applied, the relationship exception would not be applied.

In *State v. Lambert*, 238 Kan. 444, 710 P.2d 693 (1985), as police executed a search warrant for an apartment occupied by a man named Randy, they discovered two women seated at a table in the kitchen—neither was a resident of the apartment. There was a tray containing marijuana on the table between them. An officer arrested the women for possession and moved them to the living room, returning to the kitchen to search a purse that was sitting on the table. Applying the reasoning of *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), the court in *Lambert* determined that the search of the purse of a social guest was a violation of the Fourth Amendment, and that the constitutional right attached to the individual, not the place. 238 Kan. at 446-50. The *Lambert* court explained:

"Even though the search warrant was being executed, each individual in the apartment who was neither named nor described in the warrant retained individual protections against an unreasonable search or seizure separate and distinct from the rights of those persons described in the warrant. A person's mere nearness to others independently suspected of criminal activity does not, without more evidence, give rise to probable cause to search that person. Since the officer executing the search warrant had no reason to believe that the purse lying on the kitchen table next to the defendant belonged to Randy [the apartment's occupant], the officer could not reasonably believe that the purse was part of the premises described in the search warrant." 238 Kan. at 450.

*Lambert* presents facts that are somewhat similar to the underlying facts of the case now before us. Jackson was a social guest not targeted in the search warrant, and there was no independent probable cause to support a search of her person or purse. However, unlike Lambert, Jackson was not in close proximity to her purse when the police officers first encountered her in the bedroom and subsequently detained her in the living room. Nonetheless, *Lambert* implies that Kansas follows the notice test. *Lambert* also supports imputation of constructive notice of ownership, as well as actual notice, because while police did not know that the purse they searched belonged to the female guest, the court indicated that they should have known it was not part of the premises described in the search warrant because the target of the warrant was a man. See 238 Kan. at 444-45, 450.

In *State v. Vandiver*, 257 Kan. 53, 63, 891 P.2d 350 (1995), the court clarified the distinction between *Lambert* and *Loudermilk*, stating that "[f]or a warrant to authorize a search of all persons on the premises . . . , the affidavit must contain facts sufficient . . . to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the items sought by warrant." The *Vandiver* court concluded that *Loudermilk* does not apply unless there are enough facts in the affidavit "to determine that, other than the occupant, persons within the premises would be involved in or conducting illegal drug sales." *Vandiver*, 257 Kan. at 63.

In *State v. Tonroy*, 32 Kan. App. 2d 920, 92 P.3d 1116 (2004), police officers were granted admittance to an apartment after a complaint of marijuana smoke emanating from the apartment. There were nine people in the apartment, including the tenant who consented to a search for marijuana on the premises. In the bedroom there were several coats on the bed and floor. A black leather jacket lying on the bed contained a baggie of marijuana. Further search of the jacket produced a wallet containing the identification of the defendant Tonroy, one of the social guests. No officer asked for, and Tonroy never gave, consent to search his jacket. In affirming the district court's decision to suppress the evidence obtained from the jacket, the Court of Appeals held that the search of Tonroy's coat was illegal even though it was in another room away from its owner. 32 Kan. App. 2d at 923-24. In doing so, the *Tonroy* court noted that "[t]he jacket was found in a pile of other coats and jackets on the bed. The State offers nothing to rebut the reasonable assumption that there is a high probability that coats and jackets piled on a bed in the bedroom of an apartment during a social gathering attended by the host and eight guests are owned by the guests rather than the host." 32 Kan. App. 2d at 925. Noting that the State had the burden to show the lawfulness of its search, the *Tonroy* court held that the consent given by the tenant did not include apparent authority to search Tonroy's jacket. 32 Kan. App. 2d at 925-26.

We recognize the authority to search in *Tonroy* was through consent by the tenant of the premises, not a search warrant, and

is thus factually distinguishable from the case before us. Nevertheless, there is legal reasoning in *Tonroy* regarding a social guest's subjective expectation of privacy that is equally applicable in consideration of Jackson's privacy rights in her purse and its contents. The *Tonroy* court stated: "Common sense tells us that social guests are not required to keep their coats with them at all times while at the host's home in order to manifest a subjective expectation of privacy." 32 Kan. App. 2d at 924:

*We apply the notice test and conclude the trial court erred.*

Both *Lambert* and *Tonroy* are highly suggestive that the notice test together with the relationship exception should be applied in Kansas to protect social guests from unreasonable search and seizure of their persons and personal property during execution of a search warrant. In our opinion, the bright-line possession test is not sufficient to provide adequate constitutional protection when considering whether the privacy rights of a guest have been violated during execution of a search warrant. We agree with the Oregon Court of Appeals in *Reid* that the possession test is potentially arbitrary and inflexible, thereby not affording due regard for the privacy rights of social guests. Accordingly, we hold that the notice test together with the relationship exception are to be applied to protect social guests from unreasonable searches and seizures of their persons and property during execution of a search warrant.

In applying the notice test under the facts of this appeal, we reject the notion that Officer Phillips did not have notice that the purses belonged to the guests and not Davenport. Phillips admitted that he knew the purses could have belonged to the female guests; thus, he had constructive notice of "containers" not subject to the reach of the search warrant. His expressed reasoning for the search was that one or all of the purses could have belonged to the target of the warrant, Davenport, and that in order to determine ownership, he was forced to open the purses. :

But Officer Phillips made no inquiry about the purses' ownership. He did not ask any of the women present in the house if they had brought a purse or which one it was. Phillips could have simply

gone into the living room and asked three questions of each guest: Did you bring a purse with you today? Is that the only purse you brought? Can you describe your purse? The true owner of the purse is most likely to have enough knowledge of the purse to describe it, while the others will probably not recall enough about the purse to describe it. Further, if Jackson had been questioned and had denied the purple purse with an orange handle was hers, she would no longer have had a subjective expectation of privacy in the purse. Moreover, if there was doubt of ownership after questioning Jackson, the officers could have applied for a supplemental search warrant or requested that a drug dog be brought to the premises. In short, the notion that the police would have been stymied and without appropriate avenues of investigation is not accurate.

The district court noted that "[i]t seems a bit silly to the Court to require officers to hold up each item that they find and say, 'Who is the owner of this particular item?'" The district court's rhetorical question would not only take us back to the simplistic possession test, it also paints a much too broad brush stroke on the issue presented in this proceeding. It is a matter of common knowledge that certain items are typically brought by social guests, such as coats in the winter, purses by women, sunglasses, or car keys which may not be kept in their physical possession during a visit. Most items in a residence subject to search will not fall into this limited category and present an undue restriction on police officers in the execution of a search warrant.

In the final analysis, we are required to balance the privacy rights of an individual under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights against the legitimate need of law enforcement to conduct a proper search under the mandate of a search warrant. We hold the State did not meet its burden to demonstrate the search of Jackson's purse was lawful and, to paraphrase *Tonroy*, the State offered nothing to rebut the reasonable assumption that three or four purses lying on a kitchen floor during a social gathering attended by three or four women were owned by the guests rather than by the female occupant of the residence. See 32 Kan. App. 2d at 925.

Accordingly, we conclude the district court erred in overruling Jackson's motion to suppress evidence. Her convictions are reversed and vacated, and we remand the case to the district court for further proceedings consistent with this opinion.

Reversed and remanded with directions.