NOT DESIGNATED FOR PUBLICATION

No. 112,963

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JESSICA J. HUNTER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed October 30, 2015. Affirmed.

*Kenneth Van Blaricum*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Tracey T. Beverlin*, of Hanson, Jorns & Beverlin, LLC, of Pratt, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

*Per Curiam*:  The State appeals the district court's decision to suppress evidence that was obtained as a result of a search of Jessica Hunter's purse during the execution of a search warrant. Hunter was a social guest on the premises subject to the search warrant, but she was not named in the warrant. The State argues that the district court erred when it suppressed the evidence because Hunter was more than a casual social guest at the residence; thus, she was subject to the warrant. For the reasons stated herein, we reject the State's argument and affirm the district court's judgment.

Pratt police department Detective Jeff Ward filed an affidavit and application for a search warrant with the Pratt County District Court on December 16, 2013, at 11:45 a.m. The search warrant affidavit alleged that Pratt police Corporal Jon McCarley, who had been a law enforcement officer since 2006 and had experience with drug and narcotic investigations, had spoken with Justin Lee Reyna on December 15, 2013, at 6:10 p.m. Reyna told McCarley that he previously had smoked marijuana and methamphetamine with Bryan Thomas Roberts at a residence on Brendon Court in Pratt, Kansas. Reyna indicated that Roberts was living at this address, and McCarley knew from prior experience that Roberts often stayed there. Reyna told McCarley that he had been to Roberts' house the previous night, December 14 at around 9 p.m., and had observed Roberts crush up some type of prescription pills, mix them into a solution, and use a needle to inject the solution into his body. Reyna said that Roberts did not have a prescription for these pills.

Based on this information, the district court issued a search warrant for the residence at a residence on Brendon Court in Pratt, Kansas, on December 16, 2013, at 11:58 a.m. The warrant authorized police to search for "[c]ontrolled dangerous substances to include but not be limited to unlawfully obtained or possession prescription only medications; Drug paraphernalia used to inject, inhale, ingest, or otherwise introduce illegal drugs into the human body." The police did not execute the search warrant that day.

On December 17, 2013, around 7:50 a.m., Pratt police officer Mike McAbee was dispatched to the residence on Brendon Court for a report of a pharmaceutical theft. When he arrived, he spoke with Kathy Saloga who was living at the residence with Roberts and Joann Pearce. Saloga showed him what prescription medications she was missing, but she did not name anyone she considered as a suspect. McAbee took a report, gave her his business card, and started to leave the residence.

2

As McAbee was leaving the residence, he received a call from Sergeant Kent Wyatt who told McAbee to remain at the residence because officers were en route with a search warrant for the residence. While McAbee waited for the other officers to arrive, he continued to speak with Saloga. She told him that Roberts and Hunter were in the residence in Roberts' room. She guessed that Hunter had spent the night at the residence.

Two officers arrived with the search warrant, and McAbee assisted in executing the warrant. McAbee did not read the search warrant before the search was conducted. He also was not briefed before the warrant was executed. McAbee testified that he assisted in the search warrant "blind" as to the information surrounding the search. The only thing McAbee knew about the search was that it was related to a drug issue. He also was aware of past drug issues involving the residence and Roberts. However, he was not aware of the specific illegal acts that justified the search warrant.

When McAbee reentered the residence, he met Hunter at the front door. Hunter was holding her purse, and she retrieved identification from her purse and provided it to McAbee. Hunter told McAbee that she wanted to leave but McAbee told her she could not leave because she was subject to the search warrant. McAbee searched Hunter's purse without her consent and found a white substance that tested positive for the presence of amphetamines and green vegetation that tested positive for marijuana. McAbee also found a marijuana pipe and a set of digital scales in the purse. Hunter admitted that she knew the marijuana pipe was in her purse but she was not aware of the methamphetamine and that someone else must have put it there.

On January 29, 2014, the State charged Hunter with one count of possession of opiates, opium, or narcotic drugs; one count of possession of hallucinogenic drugs; and one count of possession of drug paraphernalia. On March 4, 2014, Hunter filed a motion to suppress the evidence. In the motion, Hunter argued that the search warrant did not provide justification for the search of her purse and wallet.

3

On June 3, 2014, the district court held a joint preliminary hearing and hearing on the motion to suppress. The judge who presided over the hearing was the same judge who authorized the search warrant. McAbee and Saloga were the only two witnesses who testified at the hearing. After the evidence was presented, the State argued that the search of Hunter's purse was valid under the warrant because she was a visitor at the residence who was more than a casual, social guest. Hunter argued that McAbee was not authorized to search her purse based on the warrant due to the lack of any evidence of a relationship between Hunter and the illegal activities described in the warrant. The district court took the suppression issue under advisement.

On November 18, 2014, the district court issued a comprehensive memorandum opinion, including detailed findings of fact and conclusions of law. The district court ultimately ruled that it did not matter whether Hunter, who was not named in the search warrant, was more than a casual visitor at the residence because the State had failed to meet its burden of showing that there was a relationship between Hunter and the illegal activities described in the warrant. Thus, the district court found that McAbee was not authorized to search Hunter's purse based on the warrant, and the district court granted the motion to suppress the evidence. The State timely filed this interlocutory appeal.

On appeal, the State argues that the district court erred when it suppressed the evidence. Specifically, the State argues that McAbee was authorized to search Hunter's purse based on the warrant because Hunter was more than a casual social guest at the residence. The State does not argue that there is any other basis for the search of Hunter's purse. Hunter argues that her status as a social guest at the residence does not matter because the State failed to prove a relationship between Hunter and the illegal activities described in the warrant.

The standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual

4

findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Here, although the district court set forth detailed findings of fact in its memorandum opinion, none of the factual findings are disputed by the parties on appeal. When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

The parties do not challenge the general rule that a social guest on premises subject to a search warrant who is not named or described in the warrant is not subject to a search. See *State v. Vandiver*, 257 Kan. 53, Syl. ¶ 2, 891 P.2d 350 (1995). There are some exceptions to this general rule, but the only exception being argued by the parties is the relationship exception to the notice test as articulated in *State v. Jackson*, 46 Kan. App. 2d 199, 260 P.3d 1240 (2011). The relationship exception to the notice test allows police to search the personal effects of a guest on the premises where a search warrant is being executed if that guest is more than a casual visitor and "if the circumstances suggest that there is a relationship between that person and the illegal activities described in the warrant." 46 Kan. App. 2d at 203.

The parties dispute whether the relationship exception applies to the search of Hunter's purse. The State argues that Hunter was more than a casual visitor at the residence because she had spent the night with Roberts. But that is only the first part of the relationship test as articulated in *Jackson*. As the district court found, it did not matter whether Hunter was more than a casual visitor because the State had failed to meet its burden of showing that a relationship existed between Hunter and the illegal activities described in the warrant. See *Jackson*, 46 Kan. App. 2d at 203.

5

McAbee had not read the warrant application or the warrant, so he certainly could not have known if there was a relationship between Hunter and the illegal activities described in the warrant. In any event, as the district court found, there was no evidence establishing a relationship. The search warrant application was based on Reyna's report to McCarley that he previously had smoked marijuana and methamphetamine with Roberts at the residence on Brendon Court. Specifically, Reyna told McCarley that on the evening of December 14, 2013, Reyna was at the residence and observed Roberts crush up some type of prescription pills, mix them into a solution, and use a needle to inject the solution into his body. Reyna told McCarley that Roberts did not have a prescription for these pills. As the district court found, there was absolutely no evidence connecting Hunter with the illegal activities described in the application for the search warrant. The district court found this lack of connection to be especially apparent because it had been more than 2 days from the time that Reyna had observed Roberts crushing up the prescription pills to the time that Hunter's purse was searched without her consent.

The district court issued a comprehensive memorandum opinion finding that the State had failed to meet its burden of establishing a relationship between Hunter and the illegal activities described in the warrant. After reviewing the record and the briefs submitted by the parties, we conclude that the district court's findings are supported by substantial competent evidence, and the district court's ultimate legal conclusion to suppress the evidence should be affirmed. We further conclude that the district court's memorandum decision adequately explains the reasons for the decision.

Affirmed under Rule 7.042(b)(3) and (5) (2014 Kan. Ct. R. Annot. 67).

6